UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RUNBERG, INC. d/b/a/ ZEPHYRS,**

    **Plaintiff,**

v.

Case No. 2:12-cv-722
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark. R. Abel

**VICTORIA'S SECRET STORES, INC., et al.,**

    **Defendants.**

## ORDER

This matter is before the Court on Defendants' Motion for Partial Dismissal of Plaintiff's Complaint with Prejudice (Doc. No. 24) and Plaintiff's Motion for Preliminary Injunction (Doc. No. 18). For the reasons that follow, the Court **GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART** Defendants' motion and **DENIES AS MOOT** Plaintiff's motion.

### I. BACKGROUND

Defendants Victoria's Secret Stores, Inc., Victoria's Secret Stores LLC, Victoria's Secret Stores Brand Management, Inc., Victoria's Secret Direct LLC, and Limited Brands, Inc. (together "Victoria's Secret") are based in Ohio and sell women's intimate and other apparel, personal care and beauty products and accessories through retail stores, internet sales, and catalogue sales. (Compl. ¶¶ 12-17; Doc. No. 6). Victoria's Secret has several suppliers for its products, and for several years Plaintiff Runberg, Inc. d/b/a Zephyrs ("Zephyrs") was one of those suppliers. *Id.* ¶¶ 20, 21.

In 2001, Victoria's Secret and Zephyrs entered into an Amended Master Sourcing Agreement ("MSA"). *Id.*, Ex. 1. Under the terms of the MSA, Zephyrs acted as a sourcing agent, supplying goods to Victoria's Secret for sale in stores, through print catalogues, and on

Victoria's Secret's website. *Id.* ¶¶ 2, 20, 21. Pursuant to subsequent purchase orders, Zephyrs sourced, among other things and most relevant to the Court's current consideration, hosiery products for Victoria's Secret. *Id.* ¶ 21. Victoria's Secret eventually stopped sourcing hosiery products through Zephyrs. *Id.* ¶ 28.

On August 9, 2012, Zephyrs filed this action against Victoria's Secret alleging claims for relief for breach of contract (Counts 1 and 2); claims for false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Ohio Deceptive Trade Practices Act ("Ohio DTPA"), Ohio Rev. Code § 4165.01 *et seq.* (Counts 3 and 4); and, claims for false advertising under New York, New Jersey, Connecticut, Pennsylvania, and California law (Counts 5 through 9).

In their false advertising claims, Zephyrs alleges that after Victoria's Secret began sourcing its hosiery products elsewhere, it continued to use packaging depicting the products originally sourced by Zephyrs. (Compl. ¶¶ 7, 28.) Zephyrs alleges:

> [T]he Defendants are engaging in false advertising by misleading consumers about the nature and quality of the goods that they are offering for sale as those designed and previously supplied by Zephyrs, by falsely depicting Zephyrs' products on the packaging, when they are actually selling cheaper, lower quality "knockoffs."

*Id.* ¶ 7. *See also id.* at ¶ 28 (alleging that Victoria's Secret is "currently offering for sale and/or selling multiple products . . . with packaging that prominently display photographs of Zephyrs' products, but which do not actually contain Zephyrs' products"). The Complaint identifies three products at issue, all of which are hosiery products: "Lace Top Fishnet Stockings," "Fishnet Thigh-Highs With Backseam," and "Signature Stripe Thigh-High With Bows." *Id.* ¶ 29.

On September 20, 2012, Zephyrs filed its Motion for a Preliminary Injunction. (Doc. No.

18.) In that motion, Zephyrs asks the Court to restrain Victoria's Secret from continuing to use the photographs that display Zephyrs' products on packaging that contain similar products not produced by Zephyrs. On September 21, 2012, pursuant to Local Rule 65.1, the Court scheduled a telephone conference for September 25, 2012. (Doc. No. 22.)

On September 24, 2012, Victoria's Secret filed its Motion for Partial Dismissal that is directed at all of Zephyrs' claims except those for breach of contract. In that motion, Victoria's Secret asserts that Zephyrs lacks constitutional and prudential standing to bring its false advertisement/unfair competition claims and that traditional conflict of laws rules dictate that only Ohio law applies to Zephyrs' tort claims, requiring dismissal of the state law claims based on the law of states other than Ohio.

On September 25, 2012, the Court held the telephone conference necessitated by Zephyrs' Motion for a Preliminary Injunction. (Doc. No. 26.) At that conference, the parties agreed that Victoria's Secret's Motion for Partial Dismissal (Doc. No. 24), which deals with this Court's subject matter jurisdiction,[1] should be decided before addressing the injunctive relief motion. To that end, Zephyrs submitted that it will stand on its position asserted in its injunctive relief motion related to standing and Victoria's Secret was permitted to file a reply memorandum. Victoria's Secret's motion as it relates to standing is now ripe for review.

## II. STANDING

Victoria's Secret posits that Zephyrs lacks standing to bring its claims under the Lanham

---

[1]The Court will not address Victoria's Secret's request for dismissal of the state law claims brought under the law of states other than Ohio because the Court anticipated addressing only the standing issue. Zephyrs has, therefore, not been provided with the opportunity to respond to Victoria's Secret's request for dismissal of these state law claims.

3

Act and the Ohio DTPA. Ohio courts look to decisions interpreting the Lanham Act for guidance when adjudicating claims under Ohio's DTPA. *See Gascho v. Global Fitness Holdings, LLC*, Case No. 2:11-CV-00436, 2012 U.S. Dist. LEXIS 42366, at *51-52 (S.D. Ohio Mar. 28, 2012) (citing *Chandler & Assoc's v. Am.'s Healthcare Alliance*, 125 Ohio App.3d 572, 709 N.E.2d 190, 195 (Ohio Ct. App. 1997) ("When adjudicating claims arising under the [Ohio DTPA], Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law.")).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). "And, an important element of the case-or-controversy requirement is that [a] plaintiff have standing to sue." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The Supreme Court has declared that "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Supreme Court "cases have established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Failure to establish any one of them deprives a federal court of jurisdiction to hear the suit." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 560). First, Zephyrs must demonstrate it has suffered "an 'injury in fact' that is both concrete and particularized and actual or imminent." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of*

4

*Wildlife*, 504 U.S. at 560-61). Second, the injury must be fairly traceable to the challenged action of Victoria's Secret. *Id.* Finally, Zephyrs must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citing *Friends of the Earth, Inc.*, 528 U.S. at 180-81.

> The party invoking federal jurisdiction bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Warth, supra*, at 508. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i. e.*, with the manner and degree of evidence required at the successive stages of the litigation. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-889 (1990); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114-115, and n. 31 (1979); *Simon, supra*, at 45, n. 25; *Warth, supra*, at 527, and n. 6 (Brennan, J., dissenting). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *National Wildlife Federation, supra*, at 889.

*Lujan v. Defenders of Wildlife*, 504 U.S. at 561 (parallel citations omitted).

The Supreme Court has also identified three prudential standing principles which require a party to: 1) generally assert only his or her own rights, not claims of third parties; 2) not allege generalized grievances more suitable for legislative or executive resolution; and, 3) raise a claim within the zone of interest protected by the statute or constitutional provision in question. *See* 15-101 Moore's Federal Practice - Civil § 101.51; *see also, E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984-985 (11th Cir. 1990) (party alleging standing must surmount all of these prudential considerations).

## A. Article III Standing

"To establish an 'injury in fact,' the plaintiff must be 'among the injured.'" *Taylor*, 680 F.3d at 612 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 563). The "plaintiff must have a

5

'personal stake' in the dispute, alleging an injury 'particularized as to him.'" *Id.* (citing *Raines*, 521 U.S. at 819).

Zephyrs first contends that "Victoria's Secret is specifically accused of using packaging and photographs that intentionally mislead consumers about the nature and quality of certain hosiery products that they are offering for sale in their network of nearly one thousand retail stores, and on the Victoria's Secret website." (Doc. No. 19 at 1.) Alleging an injury to consumers however, cannot satisfy Article III standing in false advertising cases. *See, e.g., B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580 (7th Cir. 2001). Zephyrs must be among the injured.

To that end, Zephyrs argues that, even though it and Victoria's Secret "are not direct 'competitors' for the same end consumers[,]" it may still satisfy the Article III injury in fact requirement. (Doc. No. 19 at 16) (citations omitted). Zephyrs submits that "the majority view holds that '[t]here is no need that [a] plaintiff be a competitor to have standing, *so long as there is a link or nexus between plaintiff and the alleged falsehood*." *Id.* at 17 (citation omitted) (emphasis in original). Zephyrs continues:

> In this case, it is clear that Zephyrs has standing under Article III of the United States Constitution. First, there is a clear nexus between Zephyrs' ongoing business interests and Victoria's Secret's persistent falsehoods, as the Defendants' packaging undeniably continues to be emblazoned with prominent images of Zephyrs-Supplied Products. Furthermore, even though the goods and products do not explicitly contain "Zephyrs" branding, Victoria's Secret's continued use of the images of Zephyrs-Supplied Products impedes Zephyrs' ability to market its goods to other sellers of hosiery and undergarments, and undermines Zephyrs' reputation in the trade and in the industry as a supplier of high quality products. *See* MacKinnon[2] Aff. at ¶¶ 23, 36.

*Id. See also* MacKinnon Aff. at ¶ 38 ("Zephyrs' incentives to produce innovative and stylish

---

[2]Debra MacKinnon is the president of Zeyphrs. (MacKinnon Aff. at ¶ 1; Doc. No. 21.)

6

designs will be stifled, and Zephyrs has suffered, and is likely to continue to suffer, competitive-related and reputational injury in the trade.")

In response, Victoria's Secret contends that Zephyrs' allegations do not constitute an injury in fact sufficient to confer Article III standing. This Court agrees.

While at the pleading stage general factual allegations of injury resulting from a defendant's conduct may suffice, in this case, there is nothing on the packaging that indicates that the products were produced by Zephyrs. The Complaint alleges no facts to support its conclusory statements that these pictures on Victoria's Secret's products undermines Zephyrs' reputation, impedes its ability to market its goods to other sellers, or its ability to produce innovative products. Even if the Court were to determine the MacKinnon affidavit to be part of the pleadings, and therefore, properly viewed in considering a motion to dismiss, *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), the affidavit is wanting. Like the Complaint, it too contains only conclusory statements from which no reasonable inference can be made that Zephyrs will suffer the injuries it suggests.

Further, even if the Court were to find that Victoria's Secret's failure to update its product packaging caused Zephyrs an injury in fact, Zephyrs fails the causal connection element required of Article III standing. That is, the Court can make no reasonable inference that Zephyrs could suffer an injury to its reputation or to its ability to produce innovative products and market them as a result of the act complained of because there is no obvious association between Zephyrs and Victoria's Secret. As just stated, there is no designation on the Victoria's Secret hosiery packaging indicating that Zephyrs produced the hosiery, and the MSA between the parties prohibits Zephyrs from making that information public. Nothing about the complained of

7

packaging or products ties Zephyrs to Victoria's Secret's products.

Finally, as Victoria's Secret correctly points out, Zephyrs' argument related to the connection required misses the mark. Specifically, the nexus Zephyrs must show is not between its "business interest" and Victoria's Secret's adverting. (Doc. No. 19 at 16) ("there is a clear nexus between Zephyrs' ongoing business interests and Victoria's Secret's persistent falsehoods). Instead, the nexus must be between Zephyrs' alleged *injury* and the advertising. Zephyrs alleges no facts demonstrating how its business interests have been injured by the advertising at issue here.

Accordingly, the Court concludes that Zephyrs lacks Article III standing to bring its false advertising/unfair competition claims. However, even if Zephyrs did possess such standing, its claims would still not survive Victoria's Secret's request for dismissal because Zephyrs has not established prudential standing.

## B. Prudential Standing

Victoria's Secret argues that Zephyrs cannot establish prudential standing because its claim does not fall within the zone of interest protected by the Lanham Act. Specifically, the Sixth Circuit has held that to show that a party has standing under the Lanham Act, the "claimant can demonstrate '(1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising.'" *Static Control Components, Inc. v. Lexmark Int'l Inc.*, Nos. 09-6287/6288/6449, 2012-2 Trade Cas. (CCH) P78,027, 2012 U.S. App. LEXIS 18316, at *47 (6th Cir. Aug. 29, 2012) (citing *Famous Horse, Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 113 (2d Cir. 2010)). The *Static Control Components* court adopted this test that was set forth by the Second Circuit in *Famous*

*Horse*, noting that the Sixth Circuit had "not addressed Lanham Act standing since *Frisch's Restaurants* [*Inc., v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 649-50 (6th Cir. 1982)]."

In explaining the Lanham Act standing requirements, the *Famous Horse* court stated:

> With respect to commercial plaintiffs . . . circuits have split on how to apply prudential standing limitations. None of the various tests employed, however, hold that only the owner of a trademark has standing. The strongest application is the categorical approach utilized by the Seventh, Ninth, and Tenth Circuits. Those courts require the commercial plaintiff bringing an unfair competition claim to be in competition with the alleged false advertiser. *See, e.g., Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995); *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108-09 (9th Cir. 1992). The Third, Fifth, and Eleventh Circuits, in contrast, analyze the standing of commercial plaintiffs by applying a more flexible standard. *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1162-64 (11th Cir. 2007) (citing the standards for prudential standing established in *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538-44, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)); *see also Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 562-63 (5th Cir. 2001); *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 234 (3d Cir. 1998).
>
> On at least one occasion, we have applied the strong categorical test that in order "to have standing for a Lanham Act false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Telecom Int'l Am., Inc. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (alterations omitted), quoting *Stanfield*, 52 F.3d at 873, citing *Heath*, 9 F.3d at 575 & *Waits*, 978 F.2d at 1109. Referencing *Telecom*, at least one other circuit has understood us to have adopted the categorical approach. *See Am. Ass'n of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100, 1103-04 (8th Cir. 2006).
>
> Furthermore, although *Telecom* is the only case in which we appear to have squarely utilized the categorical approach, we have frequently stressed the importance of competition between litigants in evaluating Lanham Act claims even if we have not explicitly required competition. For example, in *Colligan*, we cited as "succinctly stat[ing] the import of § 43(a)" a decision from the district court for the District of Columbia. *Colligan*, 442 F.2d at 692 n.27, citing *Gold Seal Co. v. Weeks*, 129 F. Supp. 928 (D. D.C. 1955), superseded on other grounds by statute, 15 U.S.C. § 1071(b)(1) (2000). That decision explained that § 43(a)
>
>> means that wrongful diversion of trade resulting from false description of one's products invades that interest which an honest

9

> competitor has in fair business dealings .... In effect it says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine competition by destroying the buyer's opportunity to judge fairly between rival commodities by introducing such factors as falsely descriptive trade-marks which are capable of misinforming as to the true qualities of the competitive products.
>
> *Gold Seal*, 129 F. Supp. at 940. Similarly, *Colligan* also cited a concurrence by Judge Jerome Frank as "a learned discussion of the historical-legal relationship between protection of commercial interests and consumer interests under the rubric of unfair competition, which relationship comprises the background against which Congress enacted § 43(a)." *Colligan*, 442 F.2d at 692 n.26. . . .
>
> While stressing the importance of whether the plaintiff and defendant are in competition, our cases, with the exception of *Telecom*, have not treated this factor as a *sine qua non* of standing. Rather, we have said that competition is a factor that strongly favors standing, not that competition is an absolute requirement for standing. Our test for standing has been called the "reasonable interest" approach. . . . *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994). We have not *required* that litigants be in competition, but instead have viewed competition as a strong indication of why the plaintiff has a reasonable basis for believing that its interest will be damaged by the alleged false advertising.

*Famous Horse*, 624 F.3d at 111-113 (emphasis in original) (cited in *Static Control*, 2012 U.S. App. LEXIS 18316, at *47, 49). The Second Circuit then went on to explain that in cases where the parties' products were "not obviously in competition" it "tended to require a *more substantial showing* of injury and causation." *Id.* at 113 (citation omitted) (emphasis in original).

Here, Zephyrs admits that it is not in competition with Victoria's Secret, but claims that it has still suffered damages to its business relationships and its reputation because "other suppliers, vendors and buyers were and have become aware that Zephyrs was a supplier to Victoria's Secret." (MacKinnon Aff. at ¶ 37.) Therefore, as a non-competitor, Zephyrs is required to make a more substantial showing of injury and causation. Victoria's Secret contends that Zephyrs falls short of making that showing. This Court agrees.

10

With competition removed as a factor, there is little, if any, "indication of why [Zephyrs] has a reasonable basis for believing that its interest will be damaged by the alleged false advertising." *Famous Horse,* 624 F.3d at 113. It is not plausible, as the term is used in *Iqbal* and *Twombly*, to believe that Victoria's Secret's failure to remove the pictures of the Zephyrs-made product from the hosiery packages for similar products now made by another supplier impedes Zephyrs' ability to sell these same designs to other retailers or injures its reputation. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Neither the Complaint nor the affidavit submitted as support for Zephyrs' request for injunctive relief provides any plausible basis for these purported injuries. As discussed *supra*, the relationship between these parties was confidential and Zephyrs is not identified either on the products or on their packaging.

In an attempt to show that Victoria's Secret's failure to update its packaging photographs impedes Zephyrs' business relationships, Zephyrs relies upon portions of the MacKinnon affidavit. Specifically, MacKinnon avers that it is the exclusive licensee of the "Butterfly Lace Design," which is owned by a German company. Zephyrs contends that,

> [I]rrespective of whether Zephyrs owns any independent intellectual property right in the Butterfly Lace Design—it maintains a cognizable commercial interest in the design as [the German company]'s exclusive licensee in the United States, a relationship which Victoria's Secret undermines by continuing to emblazon the Butterfly Lace Design on its packaging without authorization or license. *Id.* at ¶ 29; *see also Twentieth Century Fox Film Corp. v. Dastar Corp.*, CV 98-7189 FMC EX, 2000 WL 35503105, at *11 (C.D. Cal. Jan. 4, 2000) (Plaintiff producers of series of

11

> video series "are the holders of the exclusive license to produce and distribute the Crusade television series on video [and] have a clear interest in preventing defendants from misleading the public in the sale of the Campaign videos" even if the television series has passed into the public domain).

(Doc. No. 19 at 19–20.) However, as Victoria's Secret accurately explains, in the absence of any allegation of trademark or copyright protection the purported license between Zephyrs and the German company cannot have any actionable impact on Victoria's Secret. The case upon which Zephyrs relies does not stand for such a proposition. While the *Twentieth Century Fox Film Corp.* case did find protection of an exclusive license, its conclusion hinged on the use of an exclusively licensed product that was protected by a copyright. *Twentieth Century Fox Film Corp.,* 2000 WL 35503105, at *1, fn. 1 ("Plaintiffs, Twentieth Century Fox Film, SFM Entertainment, and New Line Home Video, asserted claims for copyright infringement, . . . 17 U.S.C. § 501(b) states in part: 'The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.'") (citation omitted) There is no allegation of copyright infringement here.

Zephyrs' business interest must be connected with the injury it suffered–not simply with Victoria's Secret's adverting. Zephyrs makes no allegation that its relationship with the German company was harmed or that it lost business in the United States based on Victoria's Secret's continued use of the photograph of Zephyrs' product.

Finally, Zephyrs' claim regarding "other suppliers, vendors and buyers" that "were or have become aware that Zephyrs was a supplier to Victoria's Secret," does nothing to change the Court's conclusion. (MacKinnon Aff. at ¶ 37.) Even if some unidentified third party has become

12

aware that Zephyrs was a supplier to Victoria's Secret, it does not logically or reasonably follow that the knowledge of this relationship caused an injury to Zephyrs.

For these reasons, the Court finds Zephyrs has failed to establish prudential standing.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion for Partial Dismissal of Plaintiff's Complaint with Prejudice. (Doc. No. 24.) Specifically, the Court **GRANTS** the motion as it relates to Zephyrs' false advertising/unfair competition claims under the Lanham Act and the Ohio Deceptive Trade Practices Act and **DENIES WITHOUT PREJUDICE** the motion as it relates to the remaining state law claims it addresses. The dismissal of Zephyrs' false advertising/unfair competition claims renders moot its Motion for Preliminary Injunction (Doc. No. 18), which is hereby **DENIED AS MOOT**.

**IT IS SO ORDERED.**

10-23-2012
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

13